# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| OWEN KUHN, | Case No.: 4:11-cv-00141-REB |
| Petitioner, | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Respondent. | |

Now pending before the Court is Owen Kuhn's Petition for Review (Docket No. 1), seeking review of the Social Security Administration's final decision to deny his claim for Supplemental Security Income benefits. The action is brought pursuant to 42 U.S.C. § 405(g). Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I.  ADMINISTRATIVE PROCEEDINGS

On December 21, 2006, Owen Kuhn ("Petitioner") filed an application for Supplemental Security Income. (AR 145-151). Petitioner's claim was initially denied on August 27, 2007 and, again, on reconsideration on July 10, 2008. (AR 93-101). On August 6, 2008, Petitioner timely filed a Request for Hearing before an Administrative Law Judge ("ALJ"). (AR 102). On August 31, 2009, ALJ Robin L. Henrie held a hearing in Salt Lake City, Utah, at which time Petitioner, represented by attorney Nicholas Huntsman, appeared and testified. (AR 30). A

**MEMORANDUM DECISION AND ORDER - 1**

vocational expert, John F. Hurst, M.S., CRC, also appeared and testified during the same August 31, 2009 hearing. *Id*.

On December 1, 2009, the ALJ issued a decision, denying Petitioner's claims, finding that Petitioner was not disabled within the meaning of the Social Security Act. (AR 8-21). Petitioner requested review from the Appeals Council on December 18, 2009. (AR 5-7). On February 4, 2011, the Appeals Council denied Petitioner's request for review (AR 2-4), making the ALJ's decision the final decision of the Commissioner of Social Security.

Having exhausted his administrative remedies, Petitioner timely files the instant action, arguing that the decisions of the ALJ and Appeals Council "are not supported by substantial evidence, and they did not consider crucial evidence submitted in a timely fashion with regard to [Petitioner's] impairments." *See* Pet. for Review, p. 3 (Docket No. 1). Specifically, Petitioner asserts that the ALJ (1) failed to properly evaluate whether Petitioner's impairments met or equaled listed impairment; (2) failed to properly evaluate medical opinion evidence, and (3) failed to properly evaluate Petitioner's credibility. *See* Pet.'s Brief, p. 2 (Docket No. 13). Petitioner requests that the Court reverse the ALJ's decision and order the immediate payment of benefits or, alternatively, remand the case for further proceedings before a different ALJ. *See id.* at p. 18; *see also* Pet. for Review, p. 4 (Docket No. 1).

## II.  STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42

**MEMORANDUM DECISION AND ORDER - 2**

U.S.C. § 405(g). That is, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance of evidence, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's

**MEMORANDUM DECISION AND ORDER - 3**

construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id.* However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## III.  DISCUSSION

### A.      Sequential Processes

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA").  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  SGA is defined as work activity that is both substantial and gainful.  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a), 416.972(a).  "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized.  20 C.F.R. §§ 404.1572(b), 416.972(b).  If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe his physical/mental impairments are and regardless of his age, education, and work experience.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not engaged in SGA, the analysis proceeds to the second step.  Here, the ALJ found that Petitioner has not engaged in substantial gainful activity since September 20, 2006, the application date.  (AR 13).

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration

**MEMORANDUM DECISION AND ORDER - 4**

requirement.  20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work.  20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Here, the ALJ found that Petitioner had the following severe impairments: cerebral palsy, loss of vision in his left eye, and a dysthymic disorder.  (AR 13).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four.  *Id*.  Here, the ALJ concluded that Petitioner does not have an impairment (or combination of impairments) that meets or medically equals a listed impairment (AR 14).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An individual's residual functional

**MEMORANDUM DECISION AND ORDER - 5**

capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. §§ 404.1545, 416.945. Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ determined that Petitioner has the residual functional capacity to perform sedentary work, except that such work could not require: (1) standing or walking more than five to ten minutes at one time, nor more than two total hours in an eight-hour workday; (2) sitting more than twenty to thirty minutes at a time, nor more than six total hours in an eight-hour workday; (3) bending, stooping, twisting or squatting on more than a "less than occasional" basis; (4) work on the floor (i.e., kneeling, crawling, or crouching) on more than a "less than occasional" basis; (5) stair climbing on more than a "less than occasional" basis (a few steps up or down not precluded, but essentially no flights of stairs); (6) overhead lifting and reaching on more than a "less than occasional" basis; (7) more than frequent reaching, handling and fingering with the left upper extremity; (8) working in other than a clean, climate controlled environment with minimal allergens (i.e., indoor work only); (9) working around dangerous, unprotected heights, machinery, or chemicals; (10) work at more than a low stress level (where low stress means: (a) low production work (where substantial gainful activity jobs are classified as low, average, and high production); (b) essentially no working with the general public; and (c) only minimal contact with supervisors and co-workers on the job, but still having the ability to respond appropriately to supervision, co-workers, and work situation); (11) work at more than a low concentration level, which means the ability to be alert and attentive to (and

**MEMORANDUM DECISION AND ORDER - 6**

adequately perform) only unskilled work tasks; (12) work at more than a low memory level, which means the ability to understand, remember, and carry out only simple work instructions (where simple means Petitioner would be functioning at GED levels of: reasoning = 3, math = 2, and language = 3); (13) work requiring binocular vision, and normal depth perception, due to being legally blind in the left eye and having 20/25 vision in the right eye causing him mild visual deficits (only minimal reading on the job); and (14) work requiring foot controls with the left lower extremity).  (AR 14-19).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his/her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).  If the claimant is able to do other work, he is not disabled; if the claimant is not able to do other work and meets the duration requirement, he is disabled.  .  Here, the ALJ found that Petitioner has no past relevant work.  (AR 19).  However, considering Petitioner's age, education, work experience, and residual functional capacity, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that [Petitioner] can perform" – for example, office addressor, touch-up screener, and semi-conductor bonder. (AR 19-20).

## B.    Analysis

Petitioner challenges the ALJ's denial of disability benefits in three separate respects. First, Petitioner argues that the ALJ improperly found that he did not meet Listing 12.04,

**MEMORANDUM DECISION AND ORDER - 7**

Affective Disorders.  *See* Pet.'s Brief, pp. 8-10 (Docket No. 13).  Second, Petitioner argues that

the ALJ's residual functional capacity assessment failed to accurately incorporate the medical

opinion evidence.  *See id*. at pp. 11-16.  Third, Petitioner argues that the ALJ did not provide

clear and convincing evidence for rejecting his own testimony.  *See id*. at pp. 16-18.

      1.      <u>Whether Petitioner's Impairments Met or Equaled a Listed Impairment</u>

Petitioner argues that, since the ALJ found that he suffered from a dysthymic disorder,

the ALJ erred in not including an analysis of Listing 12.04 – Affective Disorders – within the

ALJ's December 1, 2009 decision.  *See id*. at p. 8.  As discussed above, an ALJ must evaluate

the claimant's impairments to see if they meet or equal any of the impairments listed in 20

C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings").  *See* 20 C.F.R. § 404.1520(d); *see also*

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If any of the impairments meet or equal a

listed impairment, he is deemed disabled.  *See id*; *see also supra* at p. 5.

An impairment meets a listed impairment "only when it manifests the specific findings

described in the set of medical criteria for that listed impairment."  *See* SSR 83-19; *see also* 20

C.F.R. § 404.1525.  An impairment equals a listed impairment only if the medical findings

(defined as a set of symptoms, signs, and laboratory findings) are at least equivalent in severity

to the set of medical findings for the listed impairment.  *See Tackett*, 190 F.3d at 1099.

"An ALJ must evaluate the relevant evidence before concluding that a claimant's

impairments do not meet or equal a listed impairment.  A boilerplate finding is insufficient to

support a conclusion that a claimant's impairment" does not meet or equal a listed impairment.

*See Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).  However, the ALJ is not required to state

why a claimant fails to satisfy every criteria of the listing if they adequately summarize and

**MEMORANDUM DECISION AND ORDER - 8**

evaluate the evidence.  *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1200-01 (9th Cir. 1990); *Lewis*, 236 F.3d at 512.

Here, the ALJ recognized Petitioner's dysthymic disorder as constituting a severe impairment, but ultimately concluded that it was not severe enough, either singly or in combination, to meet or medically equal the requirements set forth in the Listings.  (AR 14). That was, more or less, the extent of the ALJ's analysis with specific respect to Petitioner's dysthymic disorder.  That is, after stating matter-of-factly that Petitioner's severe impairments do not constitute listed impairments, the ALJ immediately went on to discuss how the medical evidence did not satisfy Listing 11.07 – Cerebral Palsy – without also specifically contrasting Petitioner's dysthymic disorder within the parameters of Listing 12.04 – Affective Disorders.[1]

A claimant suffering from an affective disorder meets the listed severity level for a depressive syndrome if enough listed factors (the "A criteria") are present.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(A).  In particular, four of the following "A criteria" symptoms must exist: (1) anhedonia or pervasive loss of interest in almost all activities; (2) appetite disturbance with change in weight; (3) sleep disturbance; (4) psychomotor agitation or

---

[1]  Indeed, in opposing the Petition for Review, Respondent states that "[s]pecial review was given to Listing 12.04 (Affective Disorders) of the Listing of impairments," specifically highlighting that:

> [T]he ALJ correctly noted the credible medical evidence of record did not document evidence of an intelligence quotient score of 70 or less; abnormal behavior patterns, such as destructiveness or emotional instability; significant interference in communication due to speech, hearing or visual defect; or sustained disturbance of gross and dexterous movements or gait and station (such as paresis, paralysis, tremor, ataxia, and sensory disturbances) . . . .

*See* Resp't's Brief, p. 16 (Docket No. 14).  Except these criteria relate to cerebral palsy, not affective disorders.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.07.

**MEMORANDUM DECISION AND ORDER - 9**

retardation; (5) decreased energy; (6) feelings of guilt or worthlessness; (7) difficulty

concentrating or thinking; (8) thoughts of suicide; or (9) hallucinations, delusions, or paranoid

thinking.  *See id*.  But the "A criteria" alone are not enough; in order to be considered *per se*

disabled, at least two of the following "B criteria" must also be present: (1) marked restriction of

activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked

difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of

decompensation, each of extended duration.  *See id* at § 12.04(B).

Although the ALJ extensively recounts the medical evidence making up the record – and,

in doing so, renders Petitioner's other arguments unpersuasive (*see infra*) – there is no actual

"special review" (as the ALJ puts it and says he has done) of Petitioner's mental condition,

balanced against the A and B criteria of Listing 12.04.  Instead, the ALJ's decision introduces

Listing 12.04 only to then dispatch its pertinence with vague, conclusory, and, at times,

inapplicable reasons for doing so (*see supra*).  While it may be the case that Petitioner does not

have an impairment or combination of impairments that meet or medially equal Listing 12.04,

the ALJ's analysis on this point does not establish as much.  In this discrete respect, therefore,

the action will be remanded to allow the ALJ the opportunity to address this aspect of his

decision.

     2.     <u>The Opinions of Petitioner's Treating Physician, Dr. Robert Hodson</u>

The Ninth Circuit has held that a treating physician's medical opinion is entitled to

special consideration and weight.  *See Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989).

The treating physician's opinion is given that deference because "he is employed to cure and has

a greater opportunity to know and observe the individual."  *Id*.  Where the treating physician's

**MEMORANDUM DECISION AND ORDER - 10**

opinions are not contradicted by another doctor, it may be rejected only for clear and convincing reasons.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Even if the treating physician's opinions are contradicted by another doctor, they can only be rejected if the ALJ provides specific and legitimate reasons, supported by substantial evidence in the record for doing so.  *Id*. Regardless, a treating physician's opinion on the ultimate issue of disability is not conclusive. *Rodriguez*, 876 F.2d at 762 (citations omitted); *see also* SSR 96-5P, 1996 WL 374183, *2 ("The regulations provide that the final responsibility for deciding [whether an individual is 'disabled' under the Act] . . . is reserved to the Commissioner."); 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability.").

Therefore, merely concluding that a particular physician is a treating physician does not mandate the adoption of that physician's opinions.  In addition to the standard outlined above, treating physicians' opinions are given less weight if they are inconsistent with the record as a whole or if the conclusions consist of vague, conclusory statements unsupported by medically acceptable data.  *Stormo v. Barnhart*, 377 F.3d 801, 805-06 (8th Cir. 2004); *see also Tonapetyan v. halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (lack of objective medical findings, treatment notes, and rationale to support treating physician's opinion is sufficient reason for rejecting that opinion).

At Exhibit 14F, Dr. Hodson's July 24, 2009 response to Petitioner's counsel's Residual Functional Capacity Questionnaire indicates that Petitioner suffers from cerebral palsy, lower back pain, and agoraphobia with panic disorder.  (AR 382).  Likewise, Dr. Hodson concluded that Petitioner (1) could only walk less than one block without rest or significant pain; (2) can sit

**MEMORANDUM DECISION AND ORDER - 11**

for 30 minutes at a time for three hours a day; (3) can stand or walk 10 minutes at a time for one

hour a day; (4) would need a job which permits him to shift positions at will; (5) would need to

take several unscheduled breaks throughout the day every 15-30 minutes, lasting 30-60 minutes

apiece; (6) could occasionally lift and carry 10 pounds or less, but never 20 pounds or more; (7)

has limitations in doing repetitive reaching, handling, or fingering; (8) could grasp, turn, and

twist objects, perform fine manipulations, and reach about 50% of the time; and (9) would need

to be absent from work more than four days a month. (AR 382-383).

      Also within Exhibit 14F, Dr. Hodson's July 24, 2009 Mental Capacity Assessment

indicates that Petitioner has marked limitations with respect to being able to (1) maintain

attention and concentration for extended periods; (2) perform activities within a schedule,

maintain regular attendance, and be punctual within customary tolerances; (3) work in

coordination with or in proximity to others without being distracted by them; (4) complete a

normal workweek without interruptions from psychologically based symptoms; (5) perform at a

consistent pace with a standard number and length of rest periods; (6) respond appropriately to

changes in the work setting; (7) be aware of normal hazards and take appropriate precautions;

and (8) travel in unfamiliar places or use public transportation.  (AR 385-387).  Additionally, Dr.

Hodson found that Petitioner has extreme limitations with respect to being able to (1) interact

appropriately with the general public; (2) accept instructions and respond appropriately to

criticism from supervisors; and (3) get along with coworkers or peers without distracting them or

exhibiting behavior extremes.  (AR 386).  As a result, Dr. Hodson concluded that Petitioner

would likely miss more than four days of work each month.  (AR 386).

      The ALJ disputed these findings.  (AR 17) ("The [ALJ] has given every consideration to

Dr. Hodson's assessment of claimant's weaknesses, both physical and mental, but cannot agree

**MEMORANDUM DECISION AND ORDER - 12**

that claimant is so limited as portrayed by Dr. Hodson's assessment because there is very little objective evidence that would indicate claimant to be so incapable of performing satisfactorily in the work place.").  The undersigned agrees.

According to a separate Onset Date Questionnaire, Dr. Hodson apparently began treating Petitioner in September 2007.  (AR 384).  However, noticeably absent from Dr. Hodson's own progress notes during this time period (consisting of three visits between September 20, 2007 and December 10, 2007)[2] are correspondingly equivalent references to Petitioner's alleged physical limitations.  *See, e.g.*, (AR 309-314) (noting Petitioner's lower extremity strength as 3-4 out of 5 and Petitioner's upper extremity strength at 4 out of 5).  Similarly, while these progress notes indicate that Petitioner suffers from depression and anxiety, they contain no details of the extent of such impairments or their effect upon Petitioner's daily living activities.  *See id.* Indeed, when repeatedly given the opportunity to disclose the medical/clinical findings that support the opinions rendered in the Mental Capacity Assessment, Dr. Hodson did not.  (AR 385-387).  The Court is mindful that a treating physician may have a "fuller" sense, so to speak, of a patient's circumstances and overall limitations than that which is specifically delineated in the ongoing notes of an office chart. However, the record here evidences only a handful of office visits over a several year period, each of an attenuated nature, and with overlapping details from one visit to the next.  Simply put, it is reasonable that the ALJ could conclude that Dr. Hodson simply did not know the Petitioner well enough to make credible statements about Petitioner's

---

[2] Dr. Hodson also saw Petitioner on November 7, 2008, November 14, 2008, April 7, 2009, May 1, 2009, and July 15, 2009.  (AR 364-376).  Though at times referencing back pain (and without any mention of Petitioner's alleged mental impairments), these visits focused primarily upon complaints attendant to ear pain, sinus congestion, pneumonia, and jaw pain (TMJ).  *See id.*

**MEMORANDUM DECISION AND ORDER - 13**

limitations in all of the areas described in the Mental Capacity Assessment and that without supporting medical evidence in the record that substantiates Dr. Hodson's assessment of Petitioner's condition, Dr. Hodson's opinions in that regard could not be validated. *See Stormo*, 377 F.3d at 805-06 (treating physician's opinions given less weight if conclusions consist of vague, conclusory statements unsupported by medically acceptable data).[3]  Contrasting the lack of treatment notes supporting Dr. Hodson's 2009 opinions, other evidence in the record exists to question the severity of Petitioner's alleged physical and mental impairments.  For example:

1.      On August 7, 2007, Dr. Kevin Hill, while recognizing Petitioner's cerebral palsy, depression, and chronic cervical pain, concluded only that he:

> [W]ould need to change positions from sitting to standing to walking as needed for pain management.  He would be able to walk short distances using a cane.  He would have difficulty with lifting and carrying objects while using his cane.  Hearing, speaking, and traveling would not be affected.  He was able to walk short distances with his cane.

(AR 303-304).  Dr. Hill reiterated his findings on June 2, 2008, rhetorically wondering whether Petitioner's claimed inability to work was a function of something *other* than his alleged "physical defects":

> Based upon medical findings, Mr. Kuhn would need to change positions as needed for pain management.  He should not be operating a car or dangerous machinery.  He should not be working at heights.  He would be able to walk short distances using a

---

[3]  The Court observes that persons such as the Petitioner who have extremely limited financial resources, are uninsured, and who live in rural areas already under served by the medical community face an unmistakable Catch-22 in these circumstances.  Their circumstances make it difficult for them to obtain regular, ongoing medical care, and when they do see physicians there are practical and financial pressures upon the provider to limit the time spent with the patient to the bare minimum.  That is not to say that the care provided is then necessarily inadequate or substandard.  However, when credibility decisions turn in part upon some purported failure by the claimant to seek medical care more often, or where a physician's records of that care are cryptic or attenuated in form, persons in Petitioner's shoes may feel helpless as to how they might put forward some different record.

**MEMORANDUM DECISION AND ORDER - 14**

cane and perform some sedentary work.  He would have difficulty with lifting and carrying objects while using his hand for more than negligible weight.  Speaking and traveling would not be affected.  I wonder if his psychological problems are not more the cause of his inability to work than his physical defects and in the future, consideration should be given to a psychological evaluation.

(AR 330-331).

2.      Dr. Thomas T. Coolidge's August 27, 2007 Physical Residual Functional

Capacity Assessment concluded that Petitioner (1) could occasionally lift or carry 20 pounds and

could frequently lift or carry 10 pounds; (2) could stand and/or walk (with normal breaks) about

six hours in an eight-hour workday; (3) could sit (with normal breaks) about six hours in an

eight-hour workday; (4) had no pushing and/or pulling limitations; (5) could occasionally climb

ramps or stairs (but never ladders, ropes, or scaffolds), balance, stoop, kneel, crouch, and crawl;

(6) had reaching limitations, but no handling, fingering, or feeling limitations; (7) had depth

perception limitations, but no near acuity, far acuity, accommodation, color vision, or field of

vision limitations; (8) had no communicative limitations; and (9) needed to avoid all exposure to

vibration and hazards, needed to avoid concentrated exposure to fumes, odors, dusts, gases, and

poor ventilation, and had no limitations to extreme cold, extreme heat, wetness, humidity, and

noise.  (AR 250-255).  Dr. Coolidge therefore concluded that Petitioner was capable of

performing light work.  (AR 256).

3.      Dr. Ward E. Dickey's July 10, 2008 Physical Residual Functional Capacity

Assessment concluded that Petitioner (1) could occasionally lift or carry 10 pounds and could

frequently lift or carry less than 10 pounds; (2) could stand and/or walk (with normal breaks) at

least two hours in an eight-hour workday; (3) could sit (with normal breaks) about six hours in

an eight-hour workday; (4) had no pushing and/or pulling limitations; (5) could occasionally

climb ramps or stairs (but never ladders, ropes, or scaffolds), balance, stoop, kneel, crouch, and

**MEMORANDUM DECISION AND ORDER - 15**

crawl; (6) had handling limitations, but no reaching, fingering, or feeling limitations; (7) had

depth perception limitations, but no near acuity, far acuity, accommodation, color vision, or field

of vision limitations; (8) had no communicative limitations; and (9) needed to avoid moderate

exposure to vibration and hazards, needed to avoid concentrated exposure to extreme cold, and

had no limitations to extreme heat, wetness, humidity, noise, and fumes, odors, dusts, gases, and

poor ventilation.  (AR 276-283).

    4.     On June 26, 2008, Dr. Donald M. Whitley, a licensed psychologist, examined

Petitioner and provisionally diagnosed him with dysthymic disorder and panic disorder with

agoraphobia.  (AR 339).  Additionally, Dr. Whitley assigned Petitioner a Global Assessment of

Functioning ("GAF") score of 50, while noting that (1) "[t]here was certainly some grandiosity

noted in some of the statements that [Petitioner] made"; (2) Petitioner has the cognitive ability to

manage his own finances; (3) Petitioner "does not do things well"; (4) Petitioner "is not

necessarily impulsive, but he does a lot of other things that are not real clear"; (5) Petitioner's

adaptability to different situations and relationships with people are strained; (6) Petitioner's

concentration was hard to determine; (7) Petitioner's immediate memory recall was fair, while

others tended to be poor; (8) Petitioner generally understood questions, but would go off on

tangents; and (9) Petitioner did not appear to be extremely anxious.[4]  (AR 334-340).[5]  Nowhere

---

    [4] Even though Petitioner did not appear overly anxious during this one-time visit, Dr. Whitley nonetheless provided the diagnosis of anxiety with agoraphobia, presumably based upon Petitioner's subjective statements.  *See, e.g.*, *Blair-Bain v. Astrue*, 356 Fed. Appx. 85, 87 (9th Cir. 2009) ("Likewise, the ALJ appropriately rejected Dr. Deodhar's diagnoses as to ailments other than fibromyalgia, as they were based on [claimant's] discredited subjective complaints and were not based on objective medical findings.").

    [5] During this time, Dr. William Hazle was also treating Petitioner.  Dr. Hazle's treatment notes "bookending" Petitioner's examination with Dr. Whitley reveals that Petitioner was not regularly taking his medication during this period.  (AR 350-351) (June 12, 2008 treatment note

did Dr. Whitley opine on Petitioner's limitations owing to his mental disorder and, therefore, never endorsed Dr. Hodson's findings in these respects.

5.     From approximately January 16, 2008 to May 13, 2009, Petitioner saw Dr. William Hazle.  (AR 342-361).  During this time, Dr. Hazle noted Petitioner's depression and anxiety, but, over time, found that Petitioner's consistent use of prescribed medication improves his mood and anxiety levels.  (AR 342-343) (May 13, 2009 treatment note indicating Petitioner's GAF score of 55 and that mood was improving while anxiety was decreasing, stating that "Lexapro [increase] has improved [Petitioner's] mood and anxiety."); *see also* (AR 55) (as to his anger outbursts, Petitioner testifying: "I'm doing pretty good right now.  Dr. Hazle has me on medication for them to keep me relaxed and stabled out.  Without them, it was pretty frequent."); (AR 70-71) (as to his mood, Petitioner testifying: "I don't think I [experience] high[s] and low[s] as much or at least not as easily, as fast.").

6.     On August 27, 2007, Dr. Maximo J. Callao's Psychiatric Review Technique indicated that Petitioner suffered from only "mild" restrictions of activities of daily living and difficulties in maintaining social functioning; and no difficulties in maintaining concentration, persistence, or pace and no episodes of decompensation.  (AR 246).  Dr. Callao concluded Petitioner's mental condition as "non-severe."  (AR 248).

7.     On July 10, 2008, Dr. Michael J. Dennis performed a Mental Residual Functional Capacity Assessment for Petitioner, finding that his ability to (1) remember locations and work-like procedures was not significantly limited; (2) understand and remember very short and

---

stating: "Has not been consistent with taking his meds = makes him moody [and] depressed; easily agitated." and "non-compliance with meds = [increase in] symptoms."); (AR 349) (July 31, 2008 treatment note stating: "non-compliance again complicates his recovery.").

**MEMORANDUM DECISION AND ORDER - 17**

simple instructions was not significantly limited; (3) understand and remember detailed instructions was only moderately limited; (4) carry out very short and simple instructions was not significantly limited; (5) carry out detailed instructions was only moderately limited; (6) maintain attention and concentration for extended periods was only moderately limited; (7) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances was not significantly limited; (8) sustain an ordinary routine without special supervision was not significantly limited; (9) work in coordination with or proximity to others without being distracted by them was not significantly limited; (10) make simple work-related decisions was not significantly limited; (11) complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods was only moderately limited; (12) interact appropriately with the general public was only moderately limited; (13) ask simple questions or request assistance was not significantly limited; (14) accept instructions and respond appropriately to criticism from supervisors was not significantly limited; (15) get along with coworkers or peers without distracting them or exhibiting behavioral extremes was only moderately limited; (16) maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness was only moderately limited; (17) respond appropriately to changes in the work setting was not significantly limited; (18) be aware of normal hazards and take appropriate precautions was only moderately limited; and (19) travel in unfamiliar places or use public transportation was not significantly limited; and (20) set realistic goals or make plans independently of others was not significantly limited.  (AR 258-259).  Ultimately, after studying the medical evidence, Dr. Dennis concluded:

**MEMORANDUM DECISION AND ORDER - 18**

Claimant has inconsistent results concerning his ability to understand and retain information in two exams less than a year apart. While Claimant has a diagnosis of anxiety with agoraphobia, he does not describe panic attacks and does go out of his home. Claimant is able to understand, recall, and carry out instructions. Claimant would do best in jobs which limit his interaction with the public. He is found capable of simple, repetitive work activity from [Alleged Onset of Disability] to present.

(AR 260).

8.      Also on July 10, 2008, Dr. Dennis performed a second Psychiatric Review

Technique and indicated that Petitioner suffered from "moderate" difficulties in maintaining

concentration, persistence, or pace; only "mild" restrictions of activities of daily living and

difficulties in maintaining social functioning; and no episodes of decompensation. (AR 272).

Dr. Dennis then reiterated his findings within the  Mental Residual Functional Capacity

Assessment of that same date. (AR 274).

From such a record, there is no question that Petitioner suffers from several severe

impairments (acknowledged by the ALJ (*see supra*)) that inescapably impact his ability to do

somes types of work; however, it cannot be said, as Petitioner's counsel does, that the "ALJ

failed to offer sufficient reasons for rejecting the treating physician opinion." *See* Pet.'s Brief, p.

16 (Docket No. 13). While Dr. Hodson's assessment as to Petitioner's physical abilities may not

have been given the weight Petitioner would have preferred, it was not given independent of the

surrounding medical record. That is, in addition to Dr. Hodson's opinions not being supported

by his own chart progress notes during the relevant time frame, such opinions are also arguably

at odds with other evidence in the record.

This Court's responsibility is not to independently resolve the conflicting opinions and

ultimately decide whether Petitioner is once-and-for-all disabled as that term is used within the

**MEMORANDUM DECISION AND ORDER - 19**

Social Security regulations.  Rather, this Court is tasked with determining whether the ALJ's decision is supported by the record.  With this in mind, given the conflicting medical opinions vis à vis Petitioner's alleged physical impairments, the ALJ need only offer specific and legitimate reasons, supported by substantial evidence in the record, for rejecting Dr. Hodson's medical opinion.  *See supra.*  Because the evidence can reasonably support the ALJ's conclusion in these respects, this Court will not substitute its judgment for that of the ALJ's.  *See Richardson*, 402 U.S. at 401; *Matney*, 981 F.2d at 1019.

       3.     <u>Petitioner's Credibility</u>

Petitioner also takes issue with the ALJ's conclusion that Petitioner's statements concerning the intensity, persistence, and limiting effects of his symptoms are not credible.  *See* Pet.'s Brief, pp. 16-17 (Docket No. 13).  As the trier of fact, the ALJ is in the best position to make credibility determinations and, for this reason, his determinations are entitled to great weight.  *Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir. 1990).  In evaluating a claimant's credibility, the ALJ may consider claimant's reputation, inconsistencies either in testimony or between testimony and conduct, daily activities, past work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms.  *Light v. Social Security Admin.*, 119 F.3d 789, 791 (9th Cir. 1997).  In short, "[c]redibility decisions are the province of the ALJ."  *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).  It should be noted, however, that to reject a claimant's testimony, the ALJ must make specific findings stating clear and convincing reasons for doing so.  *See Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).  Here, the ALJ provided sufficient reasons for calling into question Petitioner's credibility.

**MEMORANDUM DECISION AND ORDER - 20**

First, in support of his attack on the ALJ's credibility analysis, Petitioner argues that "[h]e has been diagnosed with cerebral palsy, particularly affecting his left side"; "[h]is leg is shorter on the left, he has evidence of muscle atrophy and decreased strength"; [h]e has to use a cane to walk."  *See* Pet.'s Brief, p. 17 (Docket No. 13).  These conditions, however, existed well before Petitioner's alleged onset date and, therefore, offer little evidence of a recognized disability under the law.  *See, e.g.*, *Alexander v. Commissioner of Social Sec.*, 373 Fed. Appx. 741, 744 (9th Cir. 2010) ("The ALJ did not err in disregarding Alexander's alleged fibromyalgia as disabling.  While the ALJ overlooked the fact that Dr. Emori had diagnosed fibromyalgia by assessing tenderness in at least eleven of eighteen locations, Dr. Emori diagnosed fibromyalgia in 1989, seven years before Alexander's alleged onset date.") (internal citations omitted); *see also* (AR 287) (March 17, 2006 treatment note stating: "The patient has a long history of neurologic evaluations, particularly due to recurrent headaches.  This is not a new event.").

Second, notwithstanding Petitioner's testimony, the ALJ highlighted evidence suggesting that Petitioner may not have been entirely objective when describing his alleged inability to work.  (AR 16).  For example, despite Petitioner's alleged inability to be gainfully employed, he apparently has no issue spending significant amounts of time on his computer.  *See* (AR 287) (Dr. Fabiano's March 17, 2006 treatment note stating: "He denies having any trauma that can cause his condition, however he spends an ample amount, perhaps almost the whole day, in front of a computer."); (AR 313) (Dr. Hodson's December 10, 2007 treatment note stating: "Overall, his anxiety level is down, but has become rather involved in gaming."); (AR 360) (Dr. Hazle's January 16, 2008 treatment note stating that Petitioner "likes computer groups"); (AR 336 & 339) (Dr. Whitley's June 26, 2008 treatment note stating: "He is constantly on the computer. . . .

**MEMORANDUM DECISION AND ORDER - 21**

.  For fun, he likes working with computers on the Internet").  This reality indicates that Petitioner is not disabled to the extent he claims or, simply, not motivated or interested in working,[6] thus compromising the persuasiveness of his efforts to obtain disability benefits.  The ALJ properly incorporated this finding in questioning Petitioner's credibility.

These reasons, together with the balance of potentially conflicting medical evidence (*see supra*), offer clear and convincing explanations as to why the ALJ did not find Petitioner entirely credible.  The ALJ's conclusion, while potentially at odds with another's interpretation of that same evidence, is nonetheless supported by substantial evidence in the record.  As required by controlling law, the ALJ will not be second-guessed here.  *See Batson v. Commissioner of Social Security Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) ("[t]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision.") (internal citations omitted).

## IV.  CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility.  *See Allen*, 749 F.2d at 579; *Vincent ex. rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642.  If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, the court may not substitute its own interpretation for that of the ALJ.  *Key*, 754 F.2d at 1549.

---

[6] Petitioner and his attorney repeatedly point out that, at least with respect to one instance, he was fired from his job because he failed a drug screening test due to over-the-counter cold medication.  *See* Pet.'s Brief, p. 13 (Docket No. 13); *see also* (AR 68-69 & 211).  If true, this would suggest that, as of that time, Petitioner was indeed capable of working but for his failed drug test.

**MEMORANDUM DECISION AND ORDER - 22**

As to the ALJ's determination regarding Dr. Hodson and Petitioner's credibility, the evidence upon which the ALJ relied can reasonably and rationally support his well-formed conclusions, despite the fact that such evidence may be susceptible to a different interpretation by others.

However, the reasons given by the ALJ for concluding that Petitioner's severe dysthymic disorder does not meet or equal Listing 12.04 are improperly incomplete. Therefore, the Court remands this action for further proceedings to correct the error.

## V.  ORDER

Based on the foregoing, Petitioner's request for review is GRANTED.  The Commissioner's conclusion that Petitioner's dysthymic disorder does not meet or equal Listing 12.04 is reversed and this matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum Decision and Order.  *See Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991).



DATED:  **September 10, 2012**

_____
Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 23**